United States Court of Appeals,

Eleventh Circuit.

No. 96-2568.

Michelle OCHRAN, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

July 21, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-92-CIV-FTM-23D), Steven D. Merryday, Judge.

Before COX and BIRCH, Circuit Judges, and RAFEEDIE[*], Senior District Judge.

BIRCH, Circuit Judge:

The issue in this appeal is whether the discretionary function exception to the Federal Tort Claims Act ("FTCA") shields the United States Government from liability for the allegedly negligent failure of an assistant United States attorney ("AUSA") to: (1) provide a victim or witness with protection after her life was threatened by a suspected offender; (2) inform the victim or witness of available remedies against intimidation and harassment; and (3) inform other components of the Justice Department, such as the U.S. Marshals Service, of the threat. The district court held that it lacked subject matter jurisdiction over this case because the allegedly negligent actions (and inaction) of the AUSA involve discretionary decisions. We hold that the AUSA's decisions with respect to providing protection to a victim and informing other components of the Justice Department fall within the discretionary function exception. Because we conclude, however, that the discretionary function exception does not bar a cause of action based on the alleged negligent failure of the AUSA to inform the victim of available remedies against intimidation and harassment, we reverse the district court's dismissal and remand for further proceedings.

I. BACKGROUND

In July 1991, plaintiff Michelle Ochran contacted an agent of "CLEAN" (Combined Law

---

[*]Honorable Edward Rafeedie, Senior U.S. District Judge for the Central District of California, sitting by designation.

Enforcement Against Narcotics), a non-federal anti-drug task force, and reported that her ex-boyfriend, Frank Restaino, was involved in drug-trafficking activity. The agent encouraged Ochran to remain in contact with Restaino while the task force gathered further evidence for his prosecution. The investigation in which Ochran cooperated eventually led to Restaino's arrest and prosecution on federal drug charges. Assistant U.S. Attorney Susan Daltuva ("AUSA Daltuva" or "Daltuva") was assigned to prosecute Restaino.

On September 19, 1991, the night before Restaino's arraignment, Restaino called Ochran at her father's home (where she lived) and threatened to kill her and her family because she had informed on him. Ochran called the CLEAN agent with whom she had dealt during their investigation of Restaino and reported the threat. The agent advised Ochran that she should contact AUSA Daltuva, who was now in charge of prosecuting Restaino, and gave Ochran Daltuva's telephone number. The next morning, Ochran's father called Daltuva on his daughter's behalf and reported Restaino's threats. Daltuva responded: "I'll take care of it. I'll have somebody get back to you, [don't] worry about it." Paul Ochran's Dep. at 28, Supp. R-exh. B.

After inquiring about Restaino from Drug Enforcement Administration ("DEA") agents that had dealt with him previously, AUSA Daltuva confronted Restaino and his attorney before the rearraignment hearing. Daltuva described herself "in fury," as she "scared them both [and] ... read them the riot act." Daltuva Dep. at 30-31, Supp. R-exh. E. In short, Daltuva told Restaino and his attorney that the threat to Ochran was unacceptable if Restaino was to remain out on bond. Daltuva received Restaino's assurances that it would not happen again. Daltuva then decided not to request that Restaino's bond be revoked and did not mention the threat to Ochran during the rearraignment hearing. Although it is not clear from the record who initiated contact following Restaino's arraignment, the parties agree that Daltuva later reported back to Ochran's father that she had warned Restaino not to repeat the threats and that his bond would be revoked if it happened again.

On October 22, 1991, while Restaino was out on bond, he kidnaped Ochran at knife-point from her mother's driveway, drove her to a remote area, and choked her and stabbed her repeatedly. He then covered her body with bushes and left her for dead. Fortunately, Ochran managed to

survive and found help. She was hospitalized for the stab wounds, a punctured lung, and skin abrasions.

After exhausting her administrative remedies, Ochran filed this action for damages under the FTCA, 28 U.S.C. § 1346(b), alleging that the U.S. Attorney's office negligently failed to protect her from Restaino. The Government filed a motion to dismiss or, in the alternative, for summary judgment on the basis that the discretionary function exception, 28 U.S.C. § 2680(a), bars recovery. Ochran argued that the exception does not apply to this case because AUSA Daltuva failed to discharge mandatory duties owed to Ochran under the Attorney General Guidelines for Victim and Witness Assistance (1991) and because a special relationship arose between Ochran and Daltuva. The district court concluded that the discretionary function exception deprived it of subject matter jurisdiction and granted the Government's motion. This appeal followed.

## II. DISCUSSION

We review *de novo* the district court's dismissal of the action for lack of subject matter jurisdiction as well as its interpretation and application of the statutory provisions. *Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1060 (11th Cir.1994).

A. *The Discretionary Function Exception*

The FTCA waives the United States government's sovereign immunity from suit in federal courts for the negligent actions of its employees. *See* 28 U.S.C. § 1346(b). This broad waiver of immunity, however, is subject to several exceptions. The discretionary function exception, at issue in this case, precludes government liability for "[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court has enunciated a two-part test for determining whether a government employee's action or omission falls within the discretionary function exception. *See Autery v. United States,* 992 F.2d 1523, 1526 (11th Cir.1993). First, we consider the nature of the conduct and determine whether it involves "an element of judgment or choice." *United States v. Gaubert,*

499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)); *Powers v. United States,* 996 F.2d 1121, 1124 (11th Cir.1993). Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if "a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because "the employee has no rightful option but to adhere to the directive.'" *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958-59); *see also Powers,* 996 F.2d at 1124 (giving examples of cases in which the relevant statute or policy was found to prescribe a specific course of action).

Second, if the conduct at issue involves the exercise of judgment, we must determine whether that judgment is grounded in considerations of public policy. *Gaubert,* 499 U.S. at 322-23, 111 S.Ct. at 1273-74. "[T]he purpose of the exception is to "prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* at 323, 111 S.Ct. at 1273 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)). Therefore, decisions that involve judgment grounded in these considerations fall within the exception. In making this determination, we do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting. *Id.* at 325, 111 S.Ct. at 1275; *Autery,* 992 F.2d at 1530-31. We "focus on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275.

B. *The Attorney General Guidelines*

Ochran contends that the Attorney General Guidelines for Victim and Witness Assistance (1991) [hereinafter "Guidelines"] imposed on AUSA Daltuva a mandatory course of action. The relevant provisions of the Guidelines state:

> Consistent with the provisions of 18 U.S.C. [§§ ] 3521-3528, the responsible official *shall* make the necessary and appropriate arrangements to enable victims and witnesses to receive reasonable protection against threat, harm and intimidation from a suspected offender and persons acting in concert with or at the behest of a suspected offender.

> Moreover, information on the prohibition against intimidation and harassment and the remedies therefor shall routinely be made available to victims and witnesses. The responsible official shall, if warranted, advise the component of the Justice Department having the enforcement responsibilities, (e.g. the U.S. Marshals Service), of instances involving intimidation or harassment of any victim or witness.

*Id.* art. III, § D(2) (emphasis in original). Ochran emphasizes the use of the mandatory "shall" in these provisions—pointing out that "shall" is even italicized for emphasis in one of the provisions of the published Guidelines—and argues that the provisions imposed on Daltuva three specific duties that Daltuva negligently discharged or failed to discharge. The specific duties are (1) providing Ochran with protection, (2) informing Ochran of available remedies against intimidation and harassment by Restaino, and (3) advising enforcement components of the Justice Department [hereinafter the "U.S. Marshals Service"] of the threat Ochran received.[1]

The Government, on the other hand, contends that the use of the word "shall" is not dispositive because the Guidelines provisions at issue are laden with discretionary language. The Government emphasizes that the Guidelines require the AUSA to make the "necessary and appropriate" arrangements for the "reasonable" protection of victims and witnesses; that information on the prohibition against, and remedies for, intimidation and harassment "routinely" be made available; and that the U.S. Marshals Service be advised of a threat to a victim or witness, "if warranted." *See id.* We agree with the Government that the use of the word "shall" in describing the responsibilities of the AUSA does not necessarily mean that the Guidelines left no room for the AUSA to exercise judgment or choice. *See Powers,* 996 F.2d at 1125. Even though the Guidelines require the AUSA to arrange for the reasonable protection of a victim who is threatened, they did

---

[1]The Government concedes that AUSA Daltuva is the "responsible official" within the meaning of the Guidelines. The Government stated in its brief and at oral argument that it assumes *arguendo* that Ochran is a "victim," and conceded at oral argument that the definition of the term "victim" in the Guidelines is broad enough arguably to cover Ochran. *See* Guidelines, *supra,* art. I, § D(1) ("[T]he term "victim' means a person that has suffered direct, or threatened, physical, emotional, or pecuniary harm as a result of the commission of a crime...."). We note that the Guidelines also define the term "witness" broadly as "a person who has information or evidence concerning a crime, and provides information regarding his/her knowledge to a law enforcement agency." *Id.* § D(3). Ochran also falls within this broad definition because she provided information to law enforcement agencies regarding Restaino's involvement in drug trafficking. Because the Government did not present any arguments to the contrary, we treat Ochran as a victim and witness under the Guidelines.

not specify *how* this protection is to be provided. Clearly, the AUSA would have to exercise judgment to determine the appropriate means for providing protection. On its face, the provision dealing with advising the U.S. Marshals Service of a threat gives the AUSA the authority to decide whether such action is *warranted.* Finally, the Guidelines do not specify *when* information on the prohibition against intimidation and harassment of victims must be made available. We conclude that the provisions of the Guidelines cited by Ochran leave room for responsible officials to exercise choice or judgment in discharging their responsibilities. The question as to whether decisions pursuant to these provisions fall within the discretionary function exception turns therefore on whether the judgments involved are grounded in policy considerations.

Ochran argues that the judgments that the AUSA would have to make to implement the directives of the Guidelines are not grounded in considerations of public policy and that, in any case, Daltuva's deposition shows that she in fact did not consider any social, economic, or political factors in making her decisions regarding Restaino's threat. As we have already stated, however, it is not relevant whether the government employee in fact made a policy judgment in this case. *See Autery,* 992 F.2d at 1530-31. The inquiry is whether the nature of the conduct at issue is "susceptible to policy analysis." *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275.

1. The Decision Not to Protect Ochran

We agree with the Government that the decision of the AUSA as to how to protect a victim that has been threatened by a suspected offender is susceptible to policy analysis. Generally, the AUSA would be expected to balance the victim's need for protection in light of the severity and credibility of the threat, the allocation of limited government resources, and the government's dealings with the suspected offender, such as a plea negotiation or cooperation of the suspected offender with law enforcement agencies. Other factors might be important, depending on the specific option for providing protection that the AUSA might consider. For example, in this case, Ochran contends that Daltuva should have considered Ochran for the Witness Security Program under the Witness Security Reform Act of 1984, 18 U.S.C. §§ 3521-3528; told the arraignment judge about the threat and asked that Restaino's bond be revoked; or sought a restraining or

protective order against Restaino under the provisions of the Victim and Witness Protection Act of 1982, 18 U.S. §§ 1512-1515. An examination of these options, however, illustrates the policy considerations that might be considered by the AUSA in determining the appropriate means of protecting a victim.

As the Fourth Circuit noted in *Piechowicz v. United States,* 885 F.2d 1207 (4th Cir.1989), the statutory provisions and Attorney General guidance for considering a witness for the Witness Security Program afford Justice Department personnel wide discretion, *id.* at 1212-13, and "require[ ] [such personnel] to consider, among other criteria, the witness's importance to the prosecution as an aspect of the decision, and to conclude that local authorities are unable to provide protection commensurate with the federal interest in the witness's safety," *id.* at 1213. These criteria, which are primarily related to the strength of the federal interest in ensuring the safety of a witness, are "freighted with policy overtones." *Id.; see Bergmann v. United States,* 689 F.2d 789, 793 (8th Cir.1982) ("Determining whether protection of the witness is advantageous to the federal interest rather obviously calls for a policy decision of the discretionary nature.").

Daltuva's decisions not to seek revocation of Restaino's bond or a restraining order against Restaino also implicate criteria grounded in public policy. At a general level, these decisions are within Daltuva's prosecutorial discretion; this factor, standing alone, constitutes an important public policy consideration. *Cf. Smith v. United States,* 375 F.2d 243, 248 (5th Cir.1967) (stating that "prosecutorial discretion has long been recognized as sacrosanct"). More specifically, in deciding whether to revoke a suspect's bond or seek certain orders against the suspect, an AUSA likely would balance the credibility of the threat to the victim against the prosecution's interest in negotiating a plea with the suspect or obtaining his cooperation.[2]

2. The Decision Not to Inform the U.S. Marshals Service of the Threat to Ochran

The AUSA's decision not to notify the U.S. Marshals Service of the threat to Ochran

---

[2]We do not mean to intimate in this opinion that an AUSA is justified in risking the life of a victim or witness in order to advance a plea negotiation or other dealings with the offender. Indeed, doing so willfully or even negligently might well be an abuse of discretion. The discretionary function exception shields the United States from liability for such action, however, "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

implicates the policy considerations of allocating limited government resources for the protection of victims and witnesses. In reaching this conclusion, we recognize that because budgetary constraints are almost always important to government decisions, *see Autery,* 992 F.2d at 1530 (citing *ARA Leisure Servs. v. United States,* 831 F.2d 193, 196 (9th Cir.1987)), not "every choice [that implicates such constraints] is a policy judgment shielded from liability through the operation of the discretionary function exception." *Phillips v. United States,* 956 F.2d 1071, 1075 (11th Cir.1992). The relevant inquiry in these cases is whether the government expects the employee who is making the choice in question to consider the policy implications of that choice. *See id.* (citing *Gaubert,* 499 U.S. at 335-36, 111 S.Ct. at 1280 (Scalia, J., concurring in part)). The fact that AUSAs are typically endowed with a high level of responsibility—and attendant discretion—in representing the Government as a prosecutor and civil litigant coupled with the absence of any specific guidance on how budgetary constraints should influence AUSAs' decision-making suggests that the Attorney General has entrusted to the U.S. Attorneys and their AUSAs the responsibility of allocating the limited resources of the Justice Department. Accordingly, we conclude that AUSA Daltuva's decisions on how best (and whether) to protect Ochran, including whether to notify the U.S. Marshals Service of the threat to Ochran, are susceptible to policy analysis and, thus, fall within the discretionary function exception.

3. The Decision Not to Inform Ochran of Available Remedies Against Intimidation and Harassment

We do not reach the same conclusion regarding Daltuva's decision not to inform Ochran of the remedies available against victim intimidation and harassment. Before we present our analysis of this issue, however, we deal with the dissent's suggestion that we should not address this issue because it was presented for the first time on appeal. We recognize that "*[g]enerally* this court will not reach the merits of an issue not considered by the district court." *Baker v. Bell,* 630 F.2d 1046, 1055 (5th Cir.1980) (emphasis added). This principle is a rule of practice, however, not a jurisdictional limitation. *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360 (11th Cir.1984). "The decision whether to consider an argument first made on appeal ... is "left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.' " *Roofing*

*& Sheet Metal Serv. v. La Quinta Motor Inns,* 689 F.2d 982, 989 (11th Cir.1982) [hereinafter

*Roofing* ] (quoting *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826

(1976)). The question in this case, therefore, is whether it is proper for us to exercise our discretion

to consider Ochran's "failure to inform" claim,[3] even though the district court did not address it. We

believe that this case presents compelling circumstances for exercising our discretion.

At the outset, we note that the government did not argue on appeal that we should not

address Ochran's argument. Rather, the government met Ochran's contentions head-on in its brief

as well as oral argument. We do not believe it is incumbent upon us to make a waiver argument

which the government was willing to forego. In other words, it may be that the government waived

the waiver argument. To be sure, the doctrine that the dissent invokes is prudential in nature and

can be raised by the court of appeals *sua sponte.* We are mindful, however, that one of the

underpinnings of the rule is a "concern for avoiding prejudice to the parties." *Roofing,* 689 F.2d at

990; *see Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941) (The rule

---

[3]The dissent distinguishes between Ochran's claim that the AUSA failed to advise her that a protective order was available, which does appear in the record below, and a "broad[er] "failure to inform' claim." *post* at [2414]. We submit that there is little difference between the two claims. Both are premised on the same language in the Attorney General Guidelines which provides in section D(2)of article III that "information on the prohibition against intimidation and harassment and the remedies therefor shall routinely be made available to victims and witnesses." Immediately at the end of the two-sentence paragraph that contains this language, a footnote explains: "Civil procedures for protecting victims and witnesses against such harm and intimidation, including application for temporary restraining orders and protective orders, are set out in ... 18 U.S.C. [§§ ] 1512-1514, and appear in the Appendix of these Guidelines under "Civil Remedies—Protection.' " Guidelines, *supra,* art. III, § D(2) at 10 n. 7. Thus, it is clear that the Guidelines consider the availability of protective orders under 18 U.S.C. §§ 1512-1514 to be among the information—if not the most important information—that must be communicated to a victim or witness under section D(2). **We do not believe it makes any difference with respect to the district court's jurisdiction, which is what we are deciding in this discretionary function exception case, whether the claim is for failure to advise of the availability of protective orders or failure to advise of the availability of other remedies.**

Ochran included her claim of failure to inform (of the availability of protective orders) in the Joint Pretrial Statement as well as her amended complaint. Although the district court did not formally rule on her amended complaint, it did opine in footnote four of its order that amendment of the complaint would be futile. Thus, at least implicitly, the court denied Ochran leave to amend her complaint based on futility of the proposed claims, a decision that we review *de novo. See Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 83 F.3d 1317, 1323 (1996) (en banc), *vacated on other grounds sub nom., Hess v. F.D.I.C.,* --- U.S. ----, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997).

is "essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence."). There is no prejudice to the government in this case since it fully briefed all the issues that we address.

The second purpose of the rule is a concern for judicial economy. *Roofing,* 689 F.2d at 990. We have noted, however, that no great gains in judicial economy are achieved by refusing to consider purely legal arguments raised for the first time on appeal from a motion for summary judgment. *Id.; cf. Macklin v. Singletary,* 24 F.3d 1307, 1312 (11th Cir.1994) (opinion of Carnes, J., joined by Cox and Woods, JJ.) ("[W]ith issues subject to *de novo* review on appeal, our scope of review is at its broadest and our willingness to decide without the benefit of a district court ruling should increase commensurately."). Indeed, we submit that remanding the case to the district court after full briefing and oral argument in which the parties heavily and primarily litigated section D(2) of article III of the Guidelines, and after we have expended a considerable amount of time—both before and after oral argument—parsing through that section of the Guidelines, would itself work a significant loss of judicial resources.

Moreover, we have previously recognized that there are exceptions to the general rule that we do not consider arguments first raised on appeal. *See generally Dean Witter,* 741 F.2d at 360-61 (listing exceptions). Among them, " "a federal appellate court is justified in resolving an issue not passed on below ... where the proper resolution is beyond any doubt.' " *Id.* at 361 (quoting *Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877). We believe that the issue that we address falls within this exception.

In short, although the general rule is that we do not address arguments that were not addressed by the district court, we unquestionably have the discretion to do so. Considering the particularly compelling circumstances of this case—involving, lest we forget, the near murder of a citizen, who voluntarily cooperated with the government to apprehend a drug trafficker, due to the negligence of an AUSA—and the failure of the government to argue that we should not address Ochran's claim of failure to inform, we choose to exercise that discretion. We are justified in doing so where, as here, "the interest of substantial justice is at stake." *Id.* (internal quotations omitted).

We turn therefore to the government's claim that Daltuva's decision not to inform Ochran of the remedies available against victim intimidation and harassment, including the availability of protective orders, falls within the discretionary function exception. According to the Government, such a decision involves a judgment as to when to inform the victim of these remedies. As we have already stated, we agree with that assessment. The Government has not advanced, however, any policy considerations that might influence the judgment of when to give the victim or witness the relevant information. Nor can we discern any such policy considerations.[4] We find unconvincing the Government's general assertion that the decision to inform a victim of available remedies against intimidation and harassment is inextricably linked to the decision of how to protect the victim. The Guidelines list the duty to inform in addition to, not merely as a part of, the general duty to provide reasonable protection to the victim. That the latter duty involves the consideration of public policy matters has no bearing on whether the former also involves the same considerations.[5] *Cf. Berkovitz,* 486 U.S. at 542-45, 108 S.Ct. at 1962-63 (analyzing each provision of the relevant regulations as

---

[4]We have previously noted that this circuit has not yet addressed the issue of whether the FTCA plaintiff or the government has the burden of proving the applicability of the discretionary function exception. *See Autery,* 992 F.2d at 1526 n. 6. Because neither party raised this issue, we need not decide the matter in this case. We note, however, that Ochran did point to the provisions of the Guidelines that we deal with here and has alleged that Daltuva's actions are not susceptible to policy analysis. Regardless where the burden of persuasion ultimately rests, the burden of production of the policy considerations that might influence the challenged conduct must be on the Government.

[5]This case might well provide a good illustration of the potential importance of informing a victim of the available remedies against intimidation and harassment. Had Daltuva complied with her duty under the Guidelines, she would have informed Ochran that the available remedies included informing the U.S. Marshals Service of the threat, obtaining a restraining or protective order against Restaino, revoking Restaino's bond, or protecting Ochran through the Witness Security Program. Daltuva, instead, decided merely to "scare[ ]" Restaino and his attorney by "read[ing] them the riot act," presumably because of her assessment of the seriousness of the threat against Ochran. This information could have alerted Ochran that the Government, in its discretion, had decided to provide her with a minimal level of protection and that it was incumbent upon her to seek further protection (from local authorities, for example) or to take steps to insure her own safety (for instance, by hiding with relatives or friends in another state until things settled down at home). In any case, whether Daltuva's failure to inform Ochran of the remedies was negligent and whether this negligence was the proximate cause of Ochran's injuries are not relevant considerations for the purpose of resolving the question at issue here, namely whether Daltuva's failure to inform Ochran falls within the discretionary function exception to the FTCA and thus deprives the district court of subject matter jurisdiction. *See Piechowicz v. United States,* 685 F.Supp. 486, 497 (D.Md.1988), *aff'd,* 885 F.2d 1207 (4th Cir.1989).

the source of a separate government duty). Because we conclude that the duty to inform does not involve considerations of public policy, we hold that the discretionary function exception does not bar a cause of action based on Ochran's allegation that Daltuva negligently failed to discharge her duty to inform Ochran of available remedies against intimidation and harassment.[6]

C. *Special Relationship*

Ochran argues further that the discretionary function exception does not bar a cause of action alleging negligent failure to protect because AUSA Daltuva voluntarily assumed the duty to protect Ochran, thereby inducing Ochran's reliance. *See, e.g., Miller v. United States,* 530 F.Supp. 611, 615 (E.D.Pa.1982) ("[C]ourts have ... recognized that, where the government enters into a special relationship with an individual, the government may not have any discretion as to whether to protect that individual.... [T]he negligent performance of that duty [to protect] is not shielded by the discretionary function exception.") (footnote omitted); *Merced v. City of New York,* 856 F.Supp. 826, 831 (S.D.N.Y.1994) ("The Government admits that it "may have a legal duty to protect' if it "voluntarily assumed or incurred that duty to a specific individual (4)27' ") (quoting *Piechowicz v. United States,* 685 F.Supp. 486, 498 (D.Md.1988), *aff'd,* 885 F.2d 1207 (4th Cir.1989)). According to Ochran, once Daltuva undertook to protect Ochran, she entered into a special relationship with Ochran and bound herself to discharge the duty with due care. *See, e.g., Everton v. Willard,* 468 So.2d 936, 938 (Fla.1985); *State, Office of State Attorney v. Powell,* 586 So.2d 1180, 1183

---

[6]The only issue properly before us is whether the district court has jurisdiction over Ochran's FTCA action against the United States. We therefore do not address or decide here the merits of whether Ochran has stated a claim upon which relief can be granted under the FTCA based on Daltuva's allegedly negligent failure to inform Ochran of the remedies against intimidation and harassment. For Ochran to state such a claim under the FTCA, she must allege facts that would support recovery under Florida law. *See* 28 U.S.C. § 1346(b) (FTCA makes United States liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."); *see also Fair v. United States,* 234 F.2d 288, 294-95 (5th Cir.1956) ("The substantive law of liability is furnished primarily by [state] decisions," but if the district court fails "to find determinant precedent in [state] law, it will be the [court's] duty ... to look to the general law fixing liability of private institutions for injuries to those towards whom they have a responsibility."). We note that, recently, we affirmed a judgment against the United States in a case arising in Florida where the cause of action was based on the negligent failure of United States Customs and DEA agents to discharge a non-discretionary duty to notify other components of the government of a controlled delivery of cocaine. *See Couzado v. United States,* 105 F.3d 1389 (11th Cir.1997), *aff'g in part, rev'g in part on other grounds,* 883 F.Supp. 691 (S.D.Fla.1995).

(Fla.Dist.Ct.App.1991).

The Government counters that two requirements must be satisfied for the district court to have jurisdiction in an FTCA claim: (1) there must be a state-law duty and (2) the discretionary function exception must not apply. According to the Government, the special relationship theory of liability only serves to create a state-law duty to the plaintiff, thus satisfying one of the two FTCA requirements; if the discharge of this state-law duty involves judgments grounded in considerations of public policy, the discretionary function exception bars suit against the United States. We agree.

Perhaps the strongest support for Ochran's position comes from the Supreme Court's decision in *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The plaintiff in *Indian Towing* sued the United States for the alleged negligence of the Coast Guard in maintaining a lighthouse. The government argued that the language of 28 U.S.C. § 2674 (imposing liability "in the same manner and to the same extent as a private individual under like circumstances"), in conjunction with § 2680 (the discretionary function exception), meant that the government cannot be held liable for "uniquely governmental functions." *Indian Towing,* 350 U.S. at 64, 76 S.Ct. at 124. In rejecting this argument, the Court held that the FTCA allowed liability because the government affirmatively undertook to warn the public and "it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his "good Samaritan' task in a careful manner." *Id.* at 64-65, 76 S.Ct. at 124. Justice Frankfurter went on to explain:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain the light was kept in good working order.... If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

*Id.* at 69, 76 S.Ct. at 126-27. Ochran's contention is based on similar reasoning: AUSA Daltuva exercised her discretion *whether* to protect Ochran when she promised and undertook to protect Ochran, thereby engendering reliance; the Government is therefore liable for Daltuva's negligent discharge of this undertaking. This interpretation of *Indian Towing,* however, has been severely undercut, if not altogether disavowed, by the Supreme Court in *Gaubert.*

Before *Gaubert,* federal courts had generally interpreted *Indian Towing* and other Supreme Court precedent as drawing a distinction between governmental decisions at the planning or policy making level and those at the operational or policy application level. *See, e.g., Gaubert,* 499 U.S. at 321, 111 S.Ct. at 1272-73 (explaining that the court of appeals in *Gaubert* adopted the planning/operational distinction on the basis of *Indian Towing, Varig Airlines,* and *Berkovitz* ); *Alabama Elec. Coop. v. United States,* 769 F.2d 1523, 1527 (11th Cir.1985) (arguing that "*Varig Airlines* supports the planning/operational distinction developed by the lower courts"). The discretionary function exception was said to cover decisions at the planning level, but not at the operational level. *See Gaubert,* 499 U.S. at 321, 111 S.Ct. at 1272-73 (explaining the rationale of the Fifth Circuit). The Supreme Court unequivocally rejected this distinction in *Gaubert,* explaining that "[t]he United States was held liable [in *Indian Towing* ], not because the negligence occurred at the operational level but because making sure the light was operational "did not involve any permissible exercise of policy judgment' " *Id.* at 326, 111 S.Ct. at 1275 (quoting *Berkovitz,* 486 U.S. at 538 n. 3, 108 S.Ct. at 1959 n. 3).

Therefore, *Indian Towing,* as interpreted by the *Gaubert* Court, involved discretion grounded in public policy considerations only at one level: *whether* the Coast Guard would undertake to operate the lighthouse. Significantly, the judgments involved in deciding *how* to operate the lighthouse were not grounded in public policy consideration. By contrast, as we have explained in part II.B of this opinion, the nature of the conduct at issue here is such that it involves discretion grounded in public policy considerations in deciding both *whether* and *how* to protect a victim. Thus, under *Gaubert,* even though AUSA Daltuva may have voluntarily assumed the duty of protecting Ochran, her alleged negligence in discharging that duty is not actionable under the FTCA because deciding how to protect Ochran involves the "exercise of policy judgment."[7] *Id.*

---

[7]We emphasize that, while the dealings between Daltuva and Ochran may have established a special relationship between the two and a duty on Daltuva's part to protect Ochran, these dealings did not involve a promise to perform specific actions on Ochran's behalf. A different result might have been reached in this case, had Daltuva voluntarily assumed a specific duty that involved no policy judgments. For example, had Daltuva exercised her discretion whether and how to protect Ochran by promising her that she would station U.S. Marshals at her door, but then failed to do so because Daltuva negligently misplaced the paper work and forgot about it,

III. CONCLUSION

A citizen who voluntarily cooperated with the government to apprehend a drug trafficker was almost murdered as a direct result of her cooperation. She fortunately survived, and now brings an FTCA action against the United States alleging that the assistant U.S. Attorney ("AUSA") in charge of the case failed to protect her after being made aware of death threats against her. The district court concluded that the discretionary function exception deprived it of subject matter jurisdiction and dismissed the case. We hold that the AUSA's decisions on how to provide protection to a victim and whether to inform other components of the Justice Department of a threat to a victim fall within the discretionary function exception. Because we conclude, however, that the discretionary function exception does not bar a cause of action based on the alleged negligent failure of the AUSA to inform the victim of available remedies against intimidation and harassment, we REVERSE the district court's dismissal and REMAND for further proceedings consistent with this opinion.

COX, Circuit Judge, concurring in part and dissenting in part:

I dissent from Part II-B-3 of the majority's opinion which reverses the district court because it concludes that the decision of whether to inform Ochran of available remedies against victim and witness intimidation and harassment does not involve considerations of public policy and is therefore not protected by the discretionary function exception. Because I agree with the majority that AUSA Daltuva's decisions on how to protect Ochran, including whether to notify the U.S. Marshals Service of the threat, do fall within the discretionary function exception, I join the remainder of the court's opinion.

The court's reversal of the district court focuses on one sentence of Article III, Section 3(d)(2) of the Attorney General Guidelines for Victim and Witness Assistance ("Guidelines") which requires the responsible official to routinely make available to victims and witnesses information regarding the prohibition against intimidation and harassment and the remedies therefor. The court concludes that Daltuva's alleged failure to provide Ochran with such information is not protected by the discretionary function exception because it is not the type of policy decision the FTCA was

Daltuva's negligence might have been actionable under the FTCA.

designed to protect.

While I disagree with the court's conclusion that the discretionary function exception does not bar this claim, I would not address the issue because this claim (except for one of its components, which I will discuss later) appears nowhere in the record. Ochran's administrative complaint filed with the Department of Justice, (R.1-43 at Tab G.), and her complaint in the district court, (R.1-1.), do not assert that Daltuva failed to inform her that victim and witness harassment is prohibited and that remedies are available. Moreover, the Government's brief in support of its motion to dismiss, (R.1-45.), and Ochran's memorandum in opposition to the Government's motion to dismiss, (R.2-49.), do not even mention Section D(2) of the Guidelines or a claim for "failure to inform." This court reviews rulings of the district court; it does not address "ever-changing theories parties fashion during the appellate process." *Wakefield v. Church of Scientology of California,* 938 F.2d 1226, 1229 n.1 (11th Cir.1991). Our decisions hold that we have discretion under some circumstances to consider a *legal issue* raised for the first time on appeal. *See, e.g., Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360-61 (11th Cir.1984). But I am aware of no decision, and the majority cites no decision, that supports the notion that we have the discretion to address a *claim* advanced for the first time on appeal, as this claim surely is. Thus I would not entertain this broad "failure to inform" claim.

One component of this claim, however, does appear in the record. After the motion to dismiss was briefed and ripe for decision, the parties prepared and filed a Joint Pretrial Statement pursuant to the Middle District of Florida's Local Rule 3.06. This statement says that the alleged negligence of the United States included "failing to advise that a protective order was available." (R.2-55 at 3.) Although no pretrial order was filed, Local Rule 3.06 suggests that the mere filing of a Joint Pretrial Statement worked an amendment of the pleadings. *See* M.D.Fla.R. 3.06(e) ("All pleadings filed by any party prior to filing of the pretrial stipulation shall be deemed to be merged therein....") Ochran later filed a motion for leave to amend her complaint in part to add this new claim. (R.2-58.) This motion was not addressed by the district court.

In short, the district court only had before it on motion to dismiss a claim that the United

States failed to protect Ochran from Restaino.  This is the only claim briefed in the district court, and this is the only claim the district court considered in its order.  (*See* R.2-85.) If the claim for "failing to advise that a protective order was available," which appeared in the late stages of this litigation, was properly raised by the Joint Pretrial Statement(and I assume that it was), we should remand to allow the district court to consider the claim in the first instance.  *See Baker v. Bell,* 630 F.2d 1046, 1055 (5th Cir.1980) ("Generally this court will not reach the merits of an issue not considered by the district court.");  *Citro Florida, Inc. v. Citrovale, S.A.,* 760 F.2d 1231, 1232 (11th Cir.1985) ("We, therefore, "decline to reach the merits of an issue on which the district court has not ruled.' ") (citation omitted) (quoting *EEOC v. Standard Forge & Axle Co.,* 496 F.2d 1392, 1394 (5th Cir.1974)).  While we have the discretion to address the legal issue presented by this claim, it seems inappropriate to do so.  In reversing the district court, the court notes that it cannot discern from the record any policy considerations that might influence the judgment of when to give a victim or witness information of the kind in question.  That is not surprising given the fact that no such claim had been advanced at the time the motion to dismiss was briefed and submitted in the district court.