[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13747
Non-Argument Calendar

_____

D.C. Docket No. 4:19-cv-00305-WTM-CLR

LILLIAN J. CUADRADO-CONCEPCION,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(April 16, 2021)

Before ROSENBAUM, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Lillian Cuadrado-Concepcion ("Cuadrado") appeals the dismissal of her complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Her complaint alleged negligence claims against the United States under the Federal Tort Claims Act ("FTCA"), based on the failure to protect her from her husband, a U.S. Army servicemember, when he returned a "changed man" from a tour in Iraq. The government moved to dismiss the complaint based on the discretionary-function and intentional-tort exceptions to the FTCA's waiver of sovereign immunity, and the district court granted that motion. On appeal, Cuadrado argues that these exceptions do not apply here because she alleged the existence of a "special relationship" between her and the Army and that the district court improperly shifted the burden to her to prove that the exceptions did not apply. After careful review, we affirm the dismissal of Cuadrado's complaint.

## I.

We take the following facts from Cuadrado's complaint, accepting them as true for purposes of this appeal. In April 2009, Cuadrado married Juan A. Guzmán, Jr., an enlisted member in the U.S. Army. Later that year, Guzmán was deployed to Iraq. He returned the next year a "changed man." Before, Guzmán had been a "gentleman," respectful and romantic. Upon his return, Guzmán was disrespectful, aggressive, and violent.

On January 5, 2011, Cuadrado notified her husband's Army superior, Captain Humphrey, that she was concerned about her husband's behavior and her own safety. The Army referred them to marriage counseling and had Guzmán receive psychiatric evaluation and treatment.

The counseling sessions did nothing to improve matters. During a session on February 11, 2011, Guzmán abruptly left when Cuadrado raised concerns about his alcohol abuse, anger, and emotional instability. After Guzmán left, Cuadrado told the counselor that she feared her husband's reaction when she returned home, and that he often looked at her as "the enemy." In other counseling sessions, her husband "displayed unexplained anger." And at home, he threatened to kill her if she kept disclosing details about their home life.

On April 13, 2011, Cuadrado called the police on her husband, who appeared to be having a bad reaction to his medications. The police took her husband to a hospital, but an Army officer, First Lieutenant Burch, intervened and took him back to the base. A few days later, Cuadrado again called the police on her husband after he raised his fist and threatened to punch her. He was arrested for simple assault.

After her husband's arrest, Burch appeared at Cuadrado's home and insisted that she bail out her husband and drop the charges. Burch assured her that the Army would take care of Guzmán, that he would not return to the home until he was stable,

and that she should not be afraid.  No military protection order was issued at that time, however, nor were other safety measures taken.

On June 10, 2011, Cuadrado was raped by Guzmán.  Soon after, she notified the Army marriage counselor, who took no action.

Guzmán's aggressive and threatening conduct continued unabated.  On August 29, 2011, after Guzmán had threatened her, Cuadrado contacted an Army victim advocate, who helped her to refer her husband's threats to the commander and to request a military protection order, which issued on August 30, 2011.  Guzmán then violated the military protection order multiple times, despite assurances from the Army that it would take care of the situation.  Scared and frustrated with the Army's failure to protect her, Cuadrado also obtained a family-violence protection order from a civil court on September 27, 2011.  Guzmán violated both protection orders on October 21, 2011, when an Army chaplain contacted her on her husband's behalf.  Guzmán was arrested, and he was eventually convicted of disorderly conduct.  Cuadrado later separated from Guzmán and divorced him.

## II.

Cuadrado filed this lawsuit under the FTCA, alleging that the United States was liable for the Army's failure to act on her complaints of verbal and physical

abuse and to protect her from her husband.[1]  She claimed that, as a result of the Army's acts and omissions, she had suffered physical injuries and severe emotional distress, including post-traumatic stress disorder, major depressive disorder, battered spouse syndrome, and a voice disorder.

The government moved to dismiss Cuadrado's complaint for lack of subject-matter jurisdiction under the FTCA's discretionary-function and intentional-tort exceptions.  Cuadrado responded that these exceptions did not apply, relying on the "Georgia doctrine of special relationship."

The district court granted the government's motion to dismiss.  The court explained that Cuadrado's claims were all based on the same conduct: "the Army's negligent handling of her complaints regarding [Guzmán's] conduct and threats against Plaintiff, the failure to act promptly to the complaints made by Plaintiff, and the failure to supervise [Guzmán]."

Applying the two-part test for the discretionary-function exception, the district court first found that Cuadrado had failed to show that the challenged conduct was a result of a failure to comply with a statute, regulation, or policy.  So, the court found that the challenged conduct involved the exercise of discretion or judgment.  Turning to the second part of the test, the court concluded that such judgment was

---

[1] In Count 4 of the complaint, Cuadrado also alleged that an Army chaplain violated the protection orders by contacting her on her husband's behalf.  But Cuadrado states that she "agree[s] with the [d]istrict [c]ourt as to the dismissal of Count 4," so we do not address this claim further.

of the kind that the exception was designed to shield. The court elaborated that "[t]he decision of whether, and how, to protect a victim necessarily involves numerous policy considerations including resources, the seriousness of the allegations, and the soldier's privacy and rights, among others." So too did the determination of "whether, and how, to supervise or monitor a soldier returning from deployment and how to handle a reported domestic violence situation."

As for Cuadrado's reliance on the "special relationship" doctrine, the district court found that it did not alter the analysis because there was no promise of "specific action that depart[ed] from later discretionary decisions." Rather, in the court's view, the Army made general promises to protect her and to monitor Guzmán, so its discharge of any special duty still involved judgments grounded in public policy.

Additionally, the district court concluded that Cuadrado's claims were independently barred by the intentional-tort exception. The court found that her claims arose out of an assault or battery by Guzmán and were related to her husband's employment relationship with the Army, despite Cuadrado's claim of a special duty unrelated to Guzmán's employment status. Cuadrado now appeals.

**III.**

"In reviewing the district court's dismissal of [Cuadrado's] complaint, we accept the allegations in the complaint as true, and we review *de novo* the district court's application of the discretionary-function exception to the FTCA's waiver of

6

sovereign immunity." *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1156–57 (11th Cir. 2020). We likewise review *de novo* the application of the intentional-tort exception to the FTCA. *Alvarez v. United States*, 862 F.3d 1297, 1301 (11th Cir. 2017).

As a sovereign entity, the United States is immune from suit unless it consents to be sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). In general, through the FTCA, Congress has waived "sovereign immunity from suit in federal courts for its employees' negligence." *Foster Logging*, 973 F.3d at 1157; *see* 28 U.S.C. § 1346(b)(1).

"Congress, however, has carved out certain exceptions to that limited waiver, including the discretionary-function exception in 28 U.S.C. § 2680(a)." *Foster Logging*, 973 F.3d at 1157. Section 2680(a) provides that the government retains its sovereign immunity as to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception is designed "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quotation marks omitted).

7

We apply a two-part test to determine whether challenged conduct falls within the discretionary-function exception. *Douglas v. United States*, 814 F.3d 1268, 1273 (11th Cir. 2016). First, we consider the nature of the conduct at issue and determine whether it is a matter of judgment or choice for the acting employee. *Swafford v. United States*, 839 F.3d 1365, 1370 (11th Cir. 2016). "Challenged conduct is not discretionary when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow because the employee has no rightful option but to adhere to the directive." *Id.* (quotation marks omitted).

Second, "[i]f the conduct involves an element of judgment and is discretionary, the court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* (quotation marks omitted). Because the discretionary-function exception "is designed to prevent judicial second guessing of decisions grounded in social, economic, and political policy," it "protects only governmental actions and decisions based on considerations of public policy." *Id.* (quotation marks omitted). In other words, "[t]he discretionary function exception applies only to conduct that involves the *permissible exercise of policy judgment*." *Id.* (emphasis in *Swafford*) (quotation marks omitted). However, "[t]his inquiry is not concerned with the subjective intent of the government employee or whether he or she actually weighed social, economic, and political policy considerations before acting." *Foster Logging*, 973 F.3d at 1158.

8

Here, both parts of the discretionary-function test are met. Cuadrado does not identify a statute, regulation, or policy that "specifically prescribes a course of action for an employee to follow," so the district court correctly found that the challenged conduct involved an element of judgment or choice. *See Swafford*, 839 F.3d at 1370. Moreover, Cuadrado does not meaningfully dispute the court's analysis that the challenged conduct involved judgments grounded in considerations of public policy. *See id.* The court observed, and our precedent requires us to agree, that the decision of whether, and how, to protect a victim of domestic violence by a servicemember "necessarily involves numerous policy considerations including resources, the seriousness of the allegations, and the soldier's privacy and rights, among others." *See Ochran v. United States*, 117 F.3d 495, 501 (11th Cir. 1997) (holding that the decision as to "how to protect a victim that has been threatened by a suspected offender is susceptible to policy analysis"); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) ("[E]ven if [18 U.S.C.] § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception."). Thus, we conclude that the challenged conduct involved an element of judgment "of the kind that the discretionary function exception was designed to shield." *Swafford*, 839 F.3d at 1370.

9

In response, Cuadrado maintains that this analysis is irrelevant because, in her view, the discretionary-function exception simply does not apply here.  According to Cuadrado, the discretionary-function exception is not applicable because her claim arose from a "special duty" that developed between her and the Army under Georgia law, thereby inducing her reliance on the Army for protection.

But binding precedent forecloses Cuadrado's argument.  In *Ochran*, we rejected the argument that "the discretionary function exception does not bar a cause of action alleging negligent failure to protect because [a government employee] voluntarily assumed the duty to protect [the plaintiff], thereby inducing [the plaintiff's] reliance."  117 F.3d at 505.  We explained that two requirements must be satisfied for the district court to have jurisdiction: "(1) there must be a state-law duty and (2) the discretionary function exception must not apply."  *Id.*  "[T]he special relationship theory of liability only serves to create a state-law duty to the plaintiff."  *Id.*  But "if the discharge of this state-law duty involves judgments grounded in considerations of public policy, the discretionary function exception bars suit against the United States."  *Id.*

Here, even assuming Cuadrado established the existence of a special relationship between her and the Army under Georgia law, that "only serves to create a state-law duty to the plaintiff."  *Id.*  But that alone is not enough because, according

to *Ochran*, the discretionary-function exception still applies "if the discharge of this state-law duty involves judgments grounded in considerations of public policy." *Id.*

Nor do the complaint's allegations plausibly show the voluntary assumption of a specific duty that involved no policy judgments. *See id.* at 506 n.7. In *Ochran*, we noted that, while there may have been a special relationship in that case, there was no "promise to perform specific actions on [the plaintiff's] behalf." *Id.* But we observed that if a government employee had "voluntarily assumed a specific duty that involved no policy judgments" and then negligently failed to follow through, such negligence might be "actionable under the FTCA." *Id.* Here, though, no government employee "voluntarily assum[ed] a specific duty that involved no policy judgments." *Id.* Rather, we agree with the district court that the only duties voluntarily assumed—to take care of her husband, to ensure he would not go back to the home until stable, and to protect her—were general in nature and still involved judgments grounded in considerations of public policy. *See id.*

Finally, Cuadrado argues that the district court erred by requiring her to prove that the discretionary-function exception did not apply. She maintains that this exception is a defense on the merits, not a matter of subject-matter jurisdiction, so the government should bear the burden of proving that it applies.

Again, though, Cuadrado argues against binding precedent. First, we have consistently treated the discretionary-function exception to the FTCA's waiver of

11

sovereign immunity as a matter affecting the district court's subject-matter jurisdiction. *See Foster Logging*, 973 F.3d at 1167 ("Because the discretionary-function exception applies here, the United States has not unequivocally waived its sovereign immunity, and the district court therefore lacked jurisdiction over Plaintiffs' FTCA claims against Defendant United States."); *Swafford*, 839 F.3d at 1369 ("If the [discretionary-function] exception were to apply to Swafford's claims, we would lack jurisdiction over this action."); *Zelaya*, 781 F.3d at 1322 (11th Cir. 2015) ("[W]hen an exception applies to neutralize what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action."). Although Cuadrado suggests that our precedent is wrong, she does not identify any Supreme Court decision that "actually abrogate[s] or directly conflict[s] with, as opposed to merely weaken[s]," this precedent. *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009). The Supreme Court's decision in *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015), does not meet that standard because it involved the FTCA's procedural time limitations, not substantive provisions limiting the scope of the government's sovereign immunity. *See id.* at 407–12 (noting that "most time bars are nonjurisdictional").

Second, and relatedly, we have generally placed the burden on the plaintiff to "prove that the discretionary function exception does not apply" when the government asserts a lack of subject-matter jurisdiction. *OSI, Inc. v. United States*,

12

285 F.3d 947, 951 (11th Cir. 2002) ("[S]ince the government has asserted lack of subject matter jurisdiction, OSI must prove that the discretionary function exception does not apply to the disposal of the landfill material."); *see also Foster Logging*, 973 F.3d at 1159 ("To survive dismissal, Plaintiffs were required to allege a plausible claim that falls outside the discretionary function exception." (quotation marks omitted)); *Douglas*, 814 F.3d at 1276 ("At the pleading stage, Mr. Douglas must allege a plausible claim that falls outside the discretionary function exception."). In any case, "[t]he allocation of burdens is not significant when the relevant facts are undisputed," which is the case here. *Hughes v. United States*, 110 F.3d 765, 768 n.1 (11th Cir. 1997) (declining to resolve whether "the plaintiff bears the burden of showing that the government's conduct is not protected by the discretionary function exception").

For these reasons, Cuadrado has failed to show that the district court erred in granting the government's motion to dismiss for lack of jurisdiction based on the discretionary-function exception.

## IV.

In sum, we affirm the district court's dismissal of Cuadrado's complaint for lack of subject-matter jurisdiction based on the discretionary-function exception to the FTCA's waiver of sovereign immunity. We therefore need not and do not

resolve whether her claims would also be barred by the FTCA's intentional-tort exception.

**AFFIRMED.**