[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 19, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15005
Non-Argument Calendar

_____

D. C. Docket No. 03-00100-CV-OC-10-GRJ

MICHAEL TRUPEI,

Plaintiff-Appellant,

versus

UNITED STATES DEPARTMENT OF JUSTICE, et al.,

Defendants,

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 19, 2007)**

Before BLACK, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Michael Trupei, a pro se federal prisoner, appeals the district court's order dismissing as time-barred Trupei's dental malpractice and Eighth Amendment claims, filed pursuant to the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. §§ 2671-80. Trupei also appeals the district court's order denying his motion for reconsideration. After review, we affirm.

## I. BACKGROUND[1]

### A. Trupei's Dental Treatment

While Trupei was a federal inmate, Dr. Kirk, a Bureau of Prisons ("BOP") staff dentist, performed two root canals on Trupei's teeth. The first root canal was performed on Trupei's No. 5 bicuspid tooth in November 1992. The second root canal was performed on Trupei's No. 4 premolar tooth in August 1993. Over the next three years, Trupei suffered intermittent pain and infection in the area of these two teeth and was treated with antibiotics and pain medication.

On March 18, 1996, Trupei developed severe pain, and the staff dentist informed him that the two teeth might need to be extracted due to the "possible failure of their rootcanal treatments." On January 30, 1997, Trupei underwent an evaluation for pain in the area of the two teeth. According to Trupei, the staff dentist failed to recognize on Trupei's x-ray that only one of the two roots to his

---

[1]The material facts are not disputed and are drawn from Trupei's amended complaint and the medical records submitted by the parties.

No. 5 tooth had been filled with inert material, or gutta percha. On April 17, 1998, Trupei again reported pain in the area of his Nos. 4 and 5 teeth. An evaluation revealed a possible failure of the root canal performed on the No. 5 tooth.

On June 8, 1998, the No. 4 tooth was extracted. Leery of the dental staff's competence, Trupei requested the tooth so he could send it to an independent dentist for evaluation. Trupei's request was denied.

On January 12, 1999, Trupei reported to sick call complaining of a headache. An x-ray of Trupei's No. 5 tooth revealed an infection. Dental staff prescribed penicillin and prepared a referral to an endodontist. The BOP's Utilization Review Committee ("URC"), however, denied Trupei's request to see an endodontist and instead mentioned the possibility of extracting his No. 5 tooth.

B.      **BOP's Administrative Remedy Process**

Trupei initiated the BOP's internal administrative remedy process and appealed the URC's decision. In his informal resolution form, dated July 1999, Trupei stated that he had been suffering from a chronic infection and pain for five years due to "'BOP's' botched rootcanal." In response, a staff counselor informed Trupei that he was suffering from a failing root canal, which was not uncommon. His request to see an endodontist was not informally resolved.

Trupei next filed a formal grievance with the warden in which he stated that

3

"the bunglings of the root canal caused by BOP's dental staff" had resulted in Trupei's ongoing suffering and that the dental staff was deliberately indifferent to his "iminent [sic] dental needs" in violation of the Eighth Amendment. The warden denied Trupei's formal grievance, noting that Trupei had refused the dental staff's recommendation to have the No. 5 tooth extracted.

Trupei appealed the warden's denial to the BOP's Southeast Regional Office. In his appeal, Trupei asserted that he needed to see a specialist to treat the "BOP's bunglings" in treating his No. 5 tooth. When the BOP failed to respond timely to Trupei's appeal, Trupei filed an appeal to the BOP's Office of the General Counsel, which denied his appeal.

C.    **Specialist Dr. Whitt**

On February 1, 2000, while Trupei's administrative appeal was pending, the BOP had Trupei examined by an endodontist, Dr. Whitt. During the February 1 visit, Dr. Whitt performed a root canal on Trupei's remaining root in his No. 5 tooth. In October 2000, Trupei returned to Dr. Whitt for an apicoectomy on his No. 5 tooth. During that visit, Dr. Whitt explained "precisely" to Trupei that his No. 5 tooth had two roots and that Dr. Kirk had failed to treat one of them, causing the infection. While Trupei's pleadings reference this apicoectomy visit as occurring in August 2000 or September 2000, the medical record shows that the

4

apicoectomy visit was on October 2, 2000.

**D. Filing of Administrative Tort Claims with BOP**

On April 15, 2002, Trupei attempted to file his administrative tort claims, as required by the FTCA, by mailing it to the Department of Health and Human Services ("HHS"). Trupei also sent the administrative tort claims to the BOP's Southeast Regional Office, albeit to the incorrect address, on April 15, 2002, and again in August 2002. Both mailings to the BOP were returned as undeliverable. Trupei then sent a copy of the administrative tort claims to the BOP's correct address, which the BOP received on September 14, 2002. The BOP rejected Trupei's claims on September 16, 2002, concluding that his claims were untimely.

**E. District Court Proceedings**

Trupei filed this lawsuit, alleging medical negligence and Eighth Amendment violations under the FTCA.[2] The government moved to dismiss, or in the alternative for summary judgment, arguing, inter alia, that the district court lacked jurisdiction because Trupei failed to present his claims to the appropriate federal agency within two years of the date his claims accrued, as required by the FTCA. See 28 U.S.C. § 2401. The government argued that Trupei's claims

---

[2]Trupei's first complaint named as defendants the United States Department of Justice and the Department of Health and Human Services. The district court ordered Trupei to file an amended complaint naming the United States as the defendant, and Trupei complied.

accrued no later than March 1996, when he was told of the possible failure of the root canal treatments. Thus, according to the government, Trupei's administrative tort claims should have been filed by March 1998, but was not filed until September 16, 2002.

Trupei responded that his claims accrued only at the apicoectomy visit, which he alleged was in August 2000, when he learned through Dr. Whitt that Dr. Kirk's failure to treat the second root on his No. 5 tooth caused the ongoing infection in his two teeth. Trupei also contended that he timely filed his administrative tort claims on April 15, 2002, when he sent it to HHS, which had a duty to forward his claims to the appropriate agency.

The district court granted the government's motion to dismiss, concluding that it lacked subject matter jurisdiction to hear Trupei's claims because they were barred by the FTCA's two-year statute of limitations.[3] The district court agreed with Trupei that his claims accrued in August 2000, when Dr. Whitt informed him that Dr. Kirk failed to treat both roots of his No. 5 tooth. However, the district court concluded that HHS had no duty under 28 C.F.R. § 14.2(b)(1) to forward to the appropriate agency a misfiled administrative tort claim. Thus, Trupei's

[3]The district court granted the government's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), concluding that it lacked subject matter jurisdiction. See Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1237-38 (11th Cir. 2002) (holding that dismissal of a FTCA claim on statute of limitations grounds is a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)).

6

administrative tort claims were untimely filed with the BOP in September 2002.

**F.      Motion for Reconsideration**

Trupei filed a motion for reconsideration, arguing that the district court erred in finding that HHS was not required to forward his claims to the BOP and that his April 2002 filing tolled the statute of limitations and fulfilled the FTCA's notice requirements. In response, the government conceded that Trupei's claims sent to HHS in April 2002 were sent to the appropriate agency, but argued that Trupei's claims were still untimely because they accrued, at the latest, on February 1, 2000, when Trupei admitted that Dr. Whitt performed the second root canal on his No. 5 tooth. Thus, the government contended that Trupei's filing with the HHS in April 2002 was time-barred.

In his reply, Trupei argued that, on February 1, 2000, Dr. Whitt merely "muttered" that Trupei's No. 5 tooth "showed only one 'innert [sic] material' (guta percha) instead of two," and Trupei did not ask Dr. Whitt what he meant by that statement. Trupei contended that his claims accrued when he returned to Dr. Whitt for the apicoectomy visit and Dr. Whitt explained to him the precise cause of his infection. This time Trupei alleged that the apicoectomy visit was in September 2000. Trupei attached to his reply recently obtained dental records, one of which indicated that Dr. Whitt actually had performed the apicoectomy during an October

7

2, 2000 visit.

The district court denied Trupei's motion for reconsideration. The district court stated that it was persuaded that Trupei's claims accrued no later than February 2, 2000, the day after Dr. Whitt performed a second root canal on the remaining root of Trupei's No. 5 tooth and more than two years before Trupei attempted to file his administrative tort claims with either the HHS or the BOP in April 2002. Trupei filed this appeal.

## II. DISCUSSION

On appeal, Trupei challenges the district court's conclusion that Trupei's administrative tort claims accrued on February 2, 2000.[4] Trupei contends that his claims accrued when Dr. Whitt performed the apicoectomy and informed Trupei that Dr. Kirk's failure to treat both roots of Trupei's No. 5 tooth caused Trupei's infection. As explained earlier, this apicoectomy visit occurred on October 2, 2000.[5]

---

[4]We review de novo the dismissal of an action for lack of subject matter jurisdiction, as well the district court's interpretation and application of statutory provisions. Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997). Factual attacks on a court's subject matter jurisdiction, as opposed to facial attacks, "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997) (citation omitted). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002).

[5]On appeal, Trupei refers to the date of his apicoectomy as September 30, 2000. However, as the government concedes, Trupei's medical records indicate that Dr. Whitt

8

Under the FTCA, a tort claim is "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). Generally, an FTCA claim "accrues" for purposes of the FTCA "at the time of the plaintiff's injury." United States v. Kubrick, 444 U.S. 111, 120, 100 S. Ct. 352, 358 (1979). More specifically, the claim "accrues" when the plaintiff is "armed with the facts about the harm done to him, [and] can protect himself by seeking advice . . . ." Id. at 123, 100 S. Ct. at 360.

In the context of medical malpractice FTCA claims, however, we apply a modified rule, and the claim accrues "when the plaintiff knows of both the injury and its cause." Diaz v. United States, 165 F.3d 1337, 1339 (11th Cir. 1999). "The rationale behind the modified rule is to protect plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the medical malpractice are in the control of the tortfeasor or are otherwise not evident." Id. Thus, "a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both [his] injury and its connection with some act of the defendant." Id. (quotation marks omitted).

However, for the medical malpractice plaintiff to discover the "cause" of his

_____

performed this procedure on October 2, 2000, and Trupei intends to refer to this date.

9

injury and, thus, for the clock to begin to run, it is not necessary for the plaintiff to "know[] the particular acts that resulted in [his] injury," so long as the plaintiff "had to know that [his] injury was probably connected to some act of those responsible for [his] treatment." Price v. United States, 775 F.2d 1491, 1494 (11th Cir. 1985) (concluding that FTCA statute of limitations began to run when plaintiff was told that a fetus was lost during her hysterectomy because the plaintiff knew a mistake had been made, even though she did not know precisely what mistake or who had made it).

Here it is undisputed that Trupei's injury – the infection around the area of his No. 5 tooth – arose shortly after his November 1992 root canal and that the injury was caused by Dr. Kirk's failure to treat both roots of the No. 5 tooth. The question presented is when did or when should have Trupei become aware of the cause of his injury.

Trupei had enough information to put him on notice of Dr. Kirk's alleged medical negligence at the latest by July 1999. As early as March 1996 and again in April 1998, the BOP dental staff informed Trupei that the November 1992 root canal on his No. 5 tooth may have failed. In June 1998, Trupei expressed doubts about the competence of the BOP dental staff when he requested that his extracted No. 4 tooth be evaluated by an independent dentist. Furthermore, by July 9, 1999,

10

Trupei had filed an informal grievance complaining of the BOP's "botched" root canal procedure that had caused his chronic infection. In other words, by July 1999, Trupei knew that his infection was probably connected to some act of the BOP's dental staff. Based on these undisputed facts, we conclude that Trupei's medical malpractice claims accrued in July 1999.

With an accrual date of July 1999, Trupei had to timely file his administrative tort claims under the FTCA by July 2001. However, the earliest Trupei attempted to file his administrative tort claims was in April 2002, when he sent a copy of his claims to HHS, almost nine months too late. Therefore, the district court correctly concluded that Trupei's claims were untimely under the FTCA.

Trupei argues that he did not have enough information until Dr. Whitt told him about Dr. Kirk's failure to treat the second root on his No. 5 tooth, which occurred during October 2000. This argument is without merit. Accrual does not require notice of the particular acts that result in the injury. See Price, 775 F.2d at 1493-94. Trupei had enough information to connect, and indeed did connect, his infection with Dr. Kirk's failed root canal by July 1999.

Thus, the district court properly concluded that Trupei's medical malpractice claims were time-barred under the FTCA, and the district court did not abuse its

11

discretion in denying Trupei's motion for reconsideration of that issue. The district court also properly dismissed Trupei's Eighth Amendment claim, which is not cognizable under the FTCA. See McCollum v. Bolger, 794 F.2d 602, 608 (11th Cir. 1986) (concluding that federal constitutional torts are not within the scope of the FTCA and the United States is not liable for damages under the FTCA for suits arising out of constitutional violations).

**AFFIRMED.**