[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10674
_____

D.C. Docket No. 1:06-cv-20861-PCH

DWIGHT JOHANNES DOWNS,

Plaintiff - Appellee,

versus

UNITED STATES ARMY CORPS OF ENGINEERS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 19, 2013)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

The main issue in this appeal is whether Dwight Johannes Downs can

establish that the United States Army Corps of Engineers was negligent under

Florida law when it allowed rocks to be included in the fill material for a beach

renourishment project. After staying up all night drinking alcoholic beverages,

Downs dove in shallow ocean waters on Miami Beach. Downs's head struck a rock, and he suffered a burst fracture of a vertebra in his neck, which rendered him a quadriplegic. Downs sued the Corps under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, and alleged that the rock that he struck had been negligently placed on the beach by the Corps. The district court entered a judgment in Downs's favor for $1,977,820.69. But Downs introduced neither expert testimony necessary to prove a professional standard of care under Florida law nor evidence to support a finding of causation in fact. We reverse the judgment in favor of Downs and render a judgment in favor of the Corps.

## I. BACKGROUND

Dwight Johannes Downs spent the evening of April 7, 2003, drinking beer with his friend Darrell Drapeau. Downs and Drapeau stayed up all night, and Downs consumed ten to twelve beers and a Hennessy Cognac. In the early morning hours of April 8, Downs and Drapeau went to the area of Miami Beach between 72nd and 73rd Streets. Downs consumed two or three more beers at the beach before he entered the ocean and dove head first into the water. Downs's head struck a rock, and the impact burst a vertebra in his neck and rendered him a quadriplegic.

The portion of the beach where Downs broke his neck was part of the Dade County Beach Erosion Control and Hurricane Protection Project. That project

2

involved dredging fill material from offshore locations and adding that material to portions of Miami Beach. Congress approved the project to be completed in accordance with the recommendations of the United States Army Corps of Engineers. In 1972, the Corps and Miami Dade County entered a local cooperation agreement that defined the responsibilities for both parties for the project. The agreement provided that the "parties mutually agree that only suitable material will be used for project beach fill, such suitable material being defined as non-rocky, sandy material similar to that of the existing beach."

The Corps divided initial construction on the project in five phases. The portion of the beach where Downs was injured was part of the second phase. The Corps awarded the contract for this portion of the project to Construction Aggregates Corporation in 1978. The terms of the contract and later modifications required Construction Aggregates to remove all rocks larger than two inches in diameter from the top twelve inches of beach fill. Construction Aggregates completed initial construction on the second phase of the project in 1980. The Corps has performed periodic maintenance on the project since then.

Downs sued the United States for negligence under the Federal Tort Claims Act. He alleged that the Corps negligently designed and constructed the project when it allowed large rocks to be included in the fill material during the beach

3

renourishment.  He also alleged that the Corps negligently failed to prevent the exposure of rocks through erosion.

The Corps moved for a summary judgment on the ground that Downs's claim was barred under the discretionary function exception to the Federal Tort Claims Act.  The district court ruled that the language of the Cooperation Agreement did not establish a fixed or readily ascertainable standard and granted a summary judgment in favor of the Corps.  We reversed that summary judgment and remanded for the district court to determine whether the requirement that "non-rocky material similar to that of the existing beach" provided a definite or readily ascertainable standard in the light of parol evidence.  See Downs v. United States, 333 Fed. App'x 403, 413 & n.6 (11th Cir. 2009).

On remand, the district court conducted an evidentiary hearing and found that "non-rocky, sandy material similar to that of the existing beach" referred to a "material consisting almost exclusively of sand (as defined by the Corps' soil classification system), with only a small percentage of interspersed gravel no larger than one or two inches in diameter."  The district court concluded that this term provided a fixed or readily ascertainable standard and that the Corps was not immune from suit under the discretionary function exception to the Federal Tort Claims Act.

4

The Corps then moved for a summary judgment or a judgment on the pleadings on the grounds that Downs's suit was barred by the Florida Statute of Repose, Fla. Stat. § 95.11, and that the Corps did not owe Downs a duty to maintain or warn. Downs withdrew his duty to warn claim, and the district court held a partial trial on whether the Florida Statute of Repose barred Downs's complaint. The district court ruled that the running of the statute of repose had not begun because performance of the Cooperation Agreement was ongoing. The district court also concluded that the Corps owed a duty to maintain because control, not ownership, determines whether a party owes that duty under Florida law.

The district court then held a bench trial on liability. At the trial, Dr. James Funk, an expert in biomechanical engineering for the government, testified that only a dive at a deep vertical angle would have generated enough force for a collision with a rock the same size as the rocks found in the area where Downs dove to cause a burst fracture and that, even if Downs had not collided with a rock, a collision with the ocean floor after a deep vertical dive would have caused a burst fracture. Downs introduced written testimony of an expert in biomechanical engineering, Dr. Richard Stalnaker, who testified that Downs must have collided with a rock to suffer a burst fracture, but his opinion assumed that Downs dove at a flat angle. Dr. Stalnaker also testified that Downs would not have suffered a burst

5

fracture if his body had not been properly aligned.  The district court credited Dr. Funk's testimony and found that it was likely that Downs dove into the ocean at a deep diagonal angle and struck his head on a large rock.  The district court also found that it was likely that the rock had been placed on the beach as part of the renourishment project and had been exposed by erosion.  The district court found that the Corps had breached a duty to Downs and that this breach was the cause of Downs's injuries because his injuries were foreseeable.  The district court allocated 50 percent of the liability to Downs, 15 percent of the liability to Miami-Dade County, 15 percent of the liability to the Corps, 10 percent of the liability to Florida, and 10 percent of the liability to the City of Miami Beach.  After a bench trial on damages, the district court entered a judgment against the Corps for $1,977,820.69.

## II.  STANDARDS OF REVIEW

Two standards of review govern this appeal.  We review the legal conclusions of the district court de novo, and the factual findings of the district court for clear error.  Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998).   The application of the discretionary function exception to the Federal Tort Claims Act is a legal issue that we review de novo.  Id.

## III.  DISCUSSION

The Corps argues that the district court lacked jurisdiction because the Cooperation Agreement failed to establish a sufficiently definite standard, but we agree with the district court that the Cooperation Agreement provided a specific mandatory standard. The district court had subject-matter jurisdiction over this matter.

Although we disagree with the Corps on the issue of jurisdiction, we agree with the alternative argument of the Corps that Downs failed to prove that the Corps acted negligently under Florida law. "The Federal Tort Claims Act [] authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred.'" United States v. Olson, 546 U.S. 43, 44–45, 126 S. Ct. 510, 511 (2005) (quoting 28 U.S.C. § 1346(b)(1)). To prevail on his claim of negligence under Florida law, Downs had to prove that the Corps owed him a duty, that the Corps breached that duty, and that the breach caused Downs's injuries. See Moransais v. Heathman, 744 So. 2d 973, 975 n.3 (Fla. 1999). Downs failed to introduce substantial evidence that the Corps both owed him a duty and caused his injuries.

Downs failed to introduce any evidence of the standard of care among engineers. The duty owed by a professional is "a duty to perform the requested services in accordance with the standard of care used by similar professionals in

the community under similar circumstances." Id. at 975–76. "Expert testimony is required to define the standard of care when the subject matter is beyond the understanding of the average juror." Ins. Co. of the W. v. Island Dream Homes, Inc., 679 F.3d 1295, 1298 (11th Cir. 2012) (applying Florida law). In the absence of expert testimony about the standard of care among engineers, we cannot conclude that the Corps violated a standard of care.

Even if Downs could establish that the Corps owed him a duty, Downs's claim of negligence would still fail because he failed to prove that the Corps caused his injury. Florida law required Downs to prove that the breach of duty was the proximate cause of his injury. See Stahl v. Metro. Dade Cnty., 438 So. 2d 14, 17 (Fla. Dist. Ct. App. 1983). "To constitute proximate cause there must be such a . . . [relationship] between the negligent act and the injury that it can reasonably be said [that] but for the act the injury would not have occurred." Sardell v. Malanio, 202 So. 2d 746, 747 (Fla. 1967) (internal quotation marks and alteration omitted). The record does not support the finding that Downs's collision with a rock was the but-for cause of his injury.

Nothing in the record supports a finding that a collision with a rock was necessary for Downs to suffer a burst fracture from a mostly vertical dive. The district court found that Downs dove into the ocean at a deep diagonal angle, and the district court credited the testimony of Dr. Funk that only a mostly vertical dive

8

could have caused Downs's injury.  But Dr. Funk also testified that "if you take the rock away, the same neck injury would occur" because of a collision with the ocean floor.  Dr. Funk explained that the mass of the ocean floor "provides the resistance to generate the force [that] breaks the neck."  The district court recognized that Dr. Funk's testimony meant that "Downs could have suffered the burst fracture that he did because gravity and 'the greatest rock of all,' the Earth, provide[d] additional 'force and momentum.'"  This testimony about the consequence of a deep diagonal dive was unrebutted.  Downs's expert, Dr. Stalnaker, testified that a collision with a rock was necessary to cause a burst fracture, but Dr. Stalnaker's analysis assumed that Downs dove into the ocean at a flat angle.  Dr. Stalnaker did not testify about whether Downs's head would have had to collide with a rock for him to suffer a burst fracture if he dove into the water at a mostly vertical angle.

Downs argues that Dr. Stalnaker's testimony relied only on the alignment of Downs's body not the angle of the dive, but we disagree.  Although Dr. Stalnaker testified that proper body alignment was necessary for Downs to suffer a burst fracture, he also testified that his analysis assumed that Downs dove at a flat angle.  Dr. Stalnaker's testimony cannot support a finding that Downs would not have suffered his injury if he had not collided with a rock because the district court found that Downs dove at a deep vertical angle.

9

## IV.  CONCLUSION

We **REVERSE** the judgment in favor of Downs and **RENDER** a judgment in favor of the Corps.

**REVERSED** and **RENDERED**.

FAY, Circuit Judge, specially concurring:

I concur in the result of the majority opinion and that portion dealing with causation.